# THE KEMPER AND NOXUBEE NAVIGATION AND REAL ESTATE BANKING COMPANY v. SCHIEF-FELIN & CO.

1. The holder of notes, or bills upon an unchartered banking association, may maintain an action against the members of the same in his own name—although such notes or bills are drawn payable to A B, or bearer, and have not been endorsed.

2. Although no issue of fact appears in the record, if the parties appear, and submit the cause to a jury, the want of an issue will be considered waived.

Error to the County Court of Sumter.

This was an action of assumpsit, brought by the defendants in error, in the County court of Sumter, to recover of the plaintiffs in error the amount of nine bills, or notes, issued by the agents of said banking company, as president and cashier, payable, respectively, to different individuals, *by name* or *to bearer*. The defendants in error sued and declared *as holders* of said several bills, which they averred were put in circulation, to answer the purposes of money; that the company was an unchartered banking association; and that said bills had been presented at the office of said banking company, in the city of Mobile—the place of payment specified in each—and payment demanded, but that neither the defendants, nor any one of them, nor any one else for them, would, or did pay the same, but refused to do so.

The defendants demurred to all the counts, except the common counts, generally, and severally—in short, by consent; and the demurrers were overruled by the court. No pleas appear upon the record; but it states, " This day came the parties, by their attorneys, and, also, came a jury of good and lawful men, &c., who being elected, tried, and sworn, the truth to speak upon the issue joined between the parties, &c." and they returned a verdict in favor of the plaintiffs; a judgment was rendered thereon; to reverse which this writ of error is prosecuted.

The errors assigned, are,

1. Because the court below overruled the several demurrers filed.

2. Because the finding of the jury was upon an issue of law, instead of fact.

Bliss & Baldwin, for plaintiffs in error.
Steele & Metcalfe, *contra*.

CLAY, J.—The first and most important question, presented by the record, for the consideration of the court, is whether the action is maintainable by the plaintiffs below, *as holders* of the several notes described in the declaration. The counsel for the plaintiffs in error contend, the action cannot be maintained by the defendants in error, in their own names, as holders, merely—and rely upon the first section of " an act to prevent the institution of illegal and oppressive suits in the United States' courts, in this State"—approved, June 30th, 1837. [Meek's Sup. 108, § 1.]

The section referred to declares, that " all bonds, bills, or notes, which shall be made payable to any person, or persons, or bearer, or to any corporation, or bearer, shall have the effect of creating an obligation, or liability, in favor of the corporation, or person, or persons only, to whom any such bond, or note, may be expressly made payable, and no one but such person or persons, or their endorsee, or personal representative, shall have a right to maintain, in his own name, an action upon any such bond, bill, or note."

This statute was enacted, as the title indicates, to " prevent the institution of illegal and oppressive suits in the United States' courts, in this State. The preamble refers to the practice of suing, in those courts, in the name of some " pretended, or fictitious bearer, for the purpose of giving jurisdiction to said courts," " on notes and bills of exchange made payable to bearer, and on endorsements in banks." It does not speak of notes or bills, *issued by* banks, or banking institutions of any description, chartered, or unchartered : consequently, it would be fair to infer, that the Legislature intended to embrace only, notes or bills made by individuals, or co-partnerships, in the course of their ordinary business transactions. Statutes can only be fairly interpreted, by having reference to the history, and circumstances of the times, in which they are enacted. Independently of the evil, alluded to in the preamble of the act, as requiring a remedy, we know that our Legislature has treated banks and individuals, and their respective rights and remedies, separately and distinctly, in a long course of enactments. They have, in fact, treated them as different classes ; and it would violate established rules of construction, to apply, by intendment, a statute having obvious relation to one class, to another. Such notes, bills, and bonds, as were usually sued upon in the courts of the United States, constituted the class of contracts intended to be embraced by the act of 1837 ; and, we presume, there had been no instance of an action, brought in those courts, on contracts of the form and nature, ordinarily issued by banks.

It is unnecessary, however, to pursue the discussion of this branch of the case, further, on this occasion. If the act of 1837 did embrace notes and bills issued by banks, and banking associations, the Legislature was entirely competent to repeal, or modify it, by subsequent enactment—and, as we believe, have exer-

cised that power, in the act of February 2d, 1839, entitled " an act to prohibit unlawful banking associations, and for other purposes." [Meek's Sup. 41.] The first section made it " unlawful for any person or persons, or any company, corporation, or unchartered banking association, to make, emit, issue, or put in circulation, any note, bill, bond, draft, check, or post note, or paper of any name or description whatsoever, to answer the purposes of money, or for general circulation, &c." and declared every such act a misdemeanor, indictable, and punishable by fine, not less than one hundred, nor more than five hundred dollars. The 2d and 3d sections, provided penalties for signing such notes, bills, &c., and for putting them in circulation. The three first sections of this act have been superseded by the provisions of the penal code, [chapter 7, § 1, 2 and 3,] and are only referred to now, as indicating the object and policy of the Legislature, and aiding us in the construction of the unrepealed portion. Section 4, which still remains in force, provides, " That each and every person, who may be a partner, or stockholder, in any company, corporation, or *unchartered banking association*, shall be liable *to the holder* of any note, bill, bond, or post note, issued, emitted, or put in circulation by said company, corporation, or unchartered banking association, for the amount of said note, bill, bond, or post note, whether he be a limited copartner, or not, *which may be recovered by the holder thereof*, before any court having competent jurisdiction."

The Legislature must be presumed to understand the subjects upon which they legislate. They cannot be supposed ignorant of the fact, that notes or bills, issued by banking associations, chartered, or unchartered, are usually made payable to some person, or bearer. They have declared that *the holder* of any such paper may maintain an action, not only against such company, but against each and every person who may be a partner thereof, whether limited or not. The manifest objects of the act were, not only to prohibit unlawful banking associations, but to facilitate recoveries against them, and each of their members or partners ; to remove pre-existing obstacles, and provide a new and easier remedy. If the act of 1837 even was applicable to bank notes, or bills, the provisions of the act of 1839 are repugnant to it, and must repeal, or modify it *pro tanto*.

If it were necessary, further, to sustain this construction of the

act of 1839, we might call to our aid its 7th section—though it has ceased to operate, by its own limitations. That section, so far from requiring endorsement to give the holder a right of action, declared that any person or persons, who should, before the first day of July ensuing its date, pass off, or transfer by delivering any such bill, bond, or note, &c., as mentioned in the preceding sections, should " be deemed, and taken as the endorser thereof," and liable to the person to whom the same was passed off, or transferred, for the amount of the paper, " without notice, protest, suit, or demand against the makers of the aforesaid papers." It would be very unreasonable to suppose, that the Legislature, while giving the holder of such paper a right of action against the person who had transferred it by mere delivery, and holding him bound as an endorser, without notice, protest, or suit, or demand against the makers, should not have intended to give him a remedy against the makers, as clear, and unembarrassed by forms and restrictions.

The case of Elliott, for the use of Hand, v. Montgomery, decided by this court, at its last term, has been referred to, and relied on by the counsel for the plaintiff in error. The question under consideration was not presented by that case, and, of course, could not have been decided. The suit had been instituted on two twenty dollar notes, issued by the Real Estate Bank of Caledonia, Mississippi. Elliott being a partner in the concern, and the notes payable to him, or bearer, Hand, the holder of them, instituted the suit in the name of Elliott, for his use. The court below instructed the jury, that as Elliott and the defendant were both partners in the association, the action could not be sustained in the name of the former, even as nominal plaintiff, for the use of the real owner. This opinion was excepted to, and afterwards assigned for error. Yet the court held that the action could be maintained, although at common law, generally, one partner can not sue another; and although the payee, being a partner, and liable for the money, it might sometimes become necessary to enforce payment against him. The judge, who delivered the opinion, remarked, " it is not necessary, that the court should now express an opinion upon that case, but, for myself, I see no reason why, even then, the general rule should not yield to the necessity for giving a speedy and effectual remedy at law." He further remarked, as the result of his examination of authorities in the

case, "that courts will always mould their proceedings so, as to afford a remedy, although at first view it may seem to be inconsistent with principles generally recognized."

It may be further remarked, that the act of 1839, which has been before noticed, does not appear to have been brought to view, or considered in the case of Elliott, use, &c. v. Montgomery. Yet it seems to us abundantly sufficient, of itself, to warrant the institution of the action against the plaintiffs in error in the names of the defendants, *as holders* of the several notes sued on ; and, therefore, in our opinion, the court below did right in over-ruling the demurrers to the declaration.

It is further assigned for error, that the finding of the jury was upon an issue of law, and not of fact.

The record does not show any other issues of law, than those formed by the demurrers and joinders already noticed. We have seen that the court below properly disposed of them. But, the defendants in that court do not appear to have answered over—at least no plea appears upon the record ; but *it sets forth* in the usual form: " This day came the parties by their attorneys, and then also came a jury of twelve good and lawful men, to-wit, Daniel L. Ayres and eleven others, who being elected, tried, and sworn to speak the truth upon the issue joined between the parties, &c."

This question has often been presented in this court, with the same result. In a late case, [Clark's adm'rs vs. Stoddard, Miller & Co.. 3 Ala. Rep. N. S. 366] no issue appeared upon the record : after remarking upon the current of decisions for some years past, the court said, " When the parties appear, and submit their cause to a jury, we must presume, if no issue appears in the record, that it was waived by the parties ; that the defendant, having no defence to make, permitted judgment to pass without opposition." Here, the parties did appear and submit their cause to a jury, who gave a verdict for the plaintiffs.

Let the judgment of the court below be affirmed.