# Barclift *v.* Lillie.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Quit-claim deed.*—A quit-claim deed is valid as a conveyance and muniment of title, conveys all the title then in the grantor, and cuts off all equities that he could assert; but, whether the grantee can claim protection against outside latent equities, see authorities cited.

2. *Vendor's lien as against remote sub-purchaser*—Where a purchaser of land from a trustee, under a deed for the benefit of creditors, paid the agreed price in full, but allowed the title to remain in the trustee, to be conveyed to such person as he might afterwards designate; and having re-sold the land at a profit, but received only part payment of the purchase-money, directed the trustee to convey to the sub-purchaser; and the sub-purchaser, having afterwards sold, and received payment of the purchase-money, instructed the trustee to convey to his vendee; and the latter, having received from the trustee a quit-claim deed which recited the several transfers, sold and conveyed to the defendant, who paid the purchase-money without notice of the outstanding vendor's lien in favor of the first purchaser; *held*, that the transaction must be treated as if a conveyance had been executed on each successive sale, and that the vendor's lien was waived and lost.

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 14th June, 1886, by John B. Lillie, against Willis A. Barclift, R. M. Carter, and J. B. Ramsey; and sought to enforce a vendor's lien on a tract of land, which the complainant had sold to said Carter, who afterwards sold to one Price, who sold to Barclift, who sold and conveyed to Ramsey. The complainant had no title to the land at the time he sold to Carter, having bought from one Harris, as trustee in a deed of trust for the benefit of creditors, but received no conveyance; and after his sale to Carter, he instructed the trustee to convey to the latter, who instructed him to convey to Price. The trustee accordingly executed a quit-claim to Price, which was dated the 10th July, 1884, and recited these several transfers. The complainant asserted a lien on the land, on account of the unpaid purchase-money due to him from Carter. A decree *pro confesso* was taken against Carter; but answers were filed by Barclift and Ramsey, each claiming to be a purchaser for value without notice of the asserted lien. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, and his decree is now assigned as error.

[Barclift v. Lillie.]

W. H. SIMPSON, for the appellants.—(1.) The sale by Lillie to Carter was, in legal effect, only an assignment of his contract with Harris, and no vendor's lien ever arose. (2.) If Lillie ever had a vendor's lien, he is estopped from asserting it against innocent purchasers for value; and the entire transaction is to be viewed as if a conveyance had been executed to each successive purchaser.—*Springle v. Morrison*, 14 Amer. Dec. 41 ; *Engle v. Burns*, 2 *Ib.* 593 ;· *Storrs v. Baxter*, 10 *Ib.* 316 ; *L'Amoreux v. Brandenburg*, 32 *Ib.* 635 ; *Steele v. Adams*, 21 Ala. 534 ; *McCaa v. Woolf*, 42 Ala. 389 ; *Wendell v. VanRennsalaer*, 1 John. Ch. 249 ; *Rice v. Bunce*, 8 Amer. Rep. 249 ; *Markham v. O'Connor*, 21 Amer. Rep. 249 ; 3 Paige, 545 ; 27 Barb. 595 ; *Burns v. Taylor*, 23 Ala. 255 ; *Traun v. Keifer*, 31 Ala. 136 ; *Davis v. Simpson*, 9 Amer. Dec. 500 ; *Preston v. McMillan*, 58 Ala. 84.

C. C. HARRIS, *contra.*—(1.) The answers are not sufficient in their averments to sustain the defense of an innocent purchase for value without notice.—*Hooper v. Strahan*, 71 Ala. 75 ; *May v. Wilkinson*, 76 Ala. 543. (2.) One who holds under a quit-claim deed only, can not set up the defense of a purchase for value without notice.—*Tillotson v. Kennedy*, 5 Ala. 407 ; *Oliver v. Piatt*, 3 How. U. S. 333.

STONE, C. J.—Waiving, for the present, the inquiry, whether the fact that Barclift holds by a quit-claim title varies the question, the objection that his defense of *bona fide* purchase without notice is not well pleaded, must be overruled. It is, in every respect, very full ; in fact, fuller and more specific than the rule requires.—*Craft v. Russell*, 67 Ala. 9. The testimony fully supports the averments of the answer.

Does the fact that, in his purchase, he accepted a deed that is only a quit-claim, deny to him the right to invoke this defense? Many authorities hold that a purchaser, whose only title is a quit-claim deed, will not be protected against latent, outside equities.— *Tillotson v. Kennedy*, 5 Ala. 407 ; 3 Washb. Real Prop. *607, *et seq.;* Tiedman Real Prop., § 781 ; 2 Pom. Eq., § 753, n. 1 ; *Oliver v. Piatt*, 3 How. U. S. 333, 410 ; *May v. Leclaire*, 11 Wall. 217 ; *Kearney v. Vaughan*, 50 Mo. 284 ; *Ridgeway v. Holliday*, 59 Mo. 444 ; *Mann v. Best*, 62 Mo. 491 ; *Watson v. Phelps*, 40 Iowa, 482. These authorities it is not our intention to question. There are authorities to the contrary.—*Chapman v. Sims*, 53 Miss. 154 ; *Hutchinson v. Hartmann*, 15 Kans. 133.

A quit-claim deed, however, is valid as a conveyance and muniment of title, conveys all the title the grantor then has,

and cuts off all equities that he can assert.—3 Washb. Real Prop. *607 et seq.; Reynolds v. Caldwell, 80 Ala. 232; Perdue v. Montg. B. & L. Asso., 79 Ala. 478.

The facts of this case are substantially as follows, as shown by the testimony, in which there is no material conflict. The title of the land was in Harris as trustee, with authority in him to sell privately or publicly, for the benefit of the creditors of his grantors, the makers of the trust. He sold to Lillie, complainant in this suit, who resided in another State. Lillie paid the purchase-money, but, at his request, title was left in Harris, to be made to such person as Lillie might afterwards designate. Lillie sold to Carter, and instructed Harris to make title to him. So far as the record informs us, the terms of the trade between Lillie and Carter were known only to themselves, until long after Barclift purchased, paid for the land, and received a conveyance, as shown farther on. In fact, Carter paid only two hundred of the seven hundred dollars, agreed purchase-price, and gave his note to Lillie for the residue. The present bill is filed to enforce a lien on the land for that unpaid purchase-money.

Carter did not take title to the lands in his own name. He sold to Price, received from him the full purchase-money, and directed Harris to make title to him, Price, which he did. The deed bears date 10th day of July, 1884; was duly acknowledged, certified and recorded, and is made part of the bill as an exhibit. It recites the making of the trust deed under which Harris sold, and continues as follows: "And whereas, under the powers given me in said deed of trust, I have heretofore bargained and sold the lands mentioned in said trust deed to J. B. Lillie, of Franklin, Tenn., at and for the sum of six hundred dollars, which said sum was paid to me in cash; and whereas the said Lillie has requested me to convey by deed said lands to R. M. Carter, of Morgan county, Ala.; and whereas the said Carter has requested me to convey by deed said lands to C. L. Price." Then follows the deed from Harris to Price, by which the former conveyed to the latter all title vested in him by the deed of trust. As we said above, this deed was duly acknowledged and certified; and on July 14, 1884, it was received and recorded in the probate office of the county in which the lands lie. In March, 1885, Price sold and conveyed the lands to Barclift, the consideration being paid in full at the time of the sale.

Not only is there no proof tending to show that Barclift had notice of Lillie's claim before he consummated his pur-

chase, but the proof is full that he made extra diligent inquiry, and that he had no such notice.

We think we do full justice to this transaction, when we hold, as we do, that it must be treated precisely as if Harris had conveyed to Lillie, Lillie to Carter, Carter to Price, and Price to Barclift. So interpreted, Lillie must be held, so far as strangers buying the land are concerned, as having parted with all interest, legal and equitable, which he held in the land. And he can have no just right to complain of this. His indiscretion, or over-confidence, induced Price to part with his money, and Barclift to part with his merchandise. Somebody must lose, and "it is more reason that he that employs and puts a trust and confidence in the deceiver should be a loser, than a stranger."—*Allen v. Maury*, 66 Ala. 10.

The decree of the chancellor is reversed, and a decree here rendered dismissing complainant's bill, at his cost.

Reversed and rendered.