Hodson v. Tibbetts.

---

## HODSON v. TIBBETTS *et al.*

1. ATTACHMENT: JURISDICTION: LIEN. In an attachment suit, under the Code of 1851, property was levied upon under the writ, a return of not found, as to defendants, made, and the notice duly published in the manner prescribed by statute; and judgment was entered without any proof that a copy of the petition and notice was sent by mail to the defendant, and without any excuse for not so sending the same: *Held:*

1. That the District Court did not have jurisdiction to render the judgment, and that a sale of the property attached thereunder was invalid and should be canceled at the suit of a subsequent purchaser of the attachment defendant: following *Broghill* v. *Lash*, 3 G. Greene, 357; *McGahen* v. *Carr*, 6 Iowa, 331.

2. That the judgment could not be cured and rendered valid by supplying the defects in the service and the proofs thereof after it was rendered.

3. That the entry of the judgment did not discharge the lien of the attachment on the property seized; and that the lien attached to the same in the hands of a purchaser, after the entry of the judgment, from the attachment defendant.

*Appeal from Clinton District Court.*

TUESDAY, APRIL 19.

ON the 20th of October, 1857, Merritt brought his action in the Clinton District Court, upon the promissory notes, against William and Thomas Tibbetts. An attachment was asked and obtained, on the proper affidavit, that the defendants had absconded from the State. Defendants were not personally served, but the attachment was levied upon certain lands, a portion of which are the subject of this controversy. May, 7, 1858, judgment was rendered against the defendants, the "record entry," recites: "This day this cause coming on to be heard, and the plaintiff appears by Graham his attorney, and the defendants, although three times solemnly called in open Court, come not, but make default, which is now here entered by order of Court; and it appearing the defendants have been duly returned by the Sheriff of Clinton county 'not found,' and that publication of the notice of the pendency of this suit had been made to the defendants for four full weeks successively in the 'Lyons Mirror,' a weekly newspaper published in Lyons, Iowa, which publication was duly made according to law, and it further appearing, that this action was brought on two promissory notes, the Court orders and the clerk assesses the damages at four hundred and forty dollars and twenty cents, with ten per cent interest per annum.

"It is therefore ordered, considered and adjudged, that the plaintiff do have and recover of and from the defendants the said sum of $440.20 damages, with costs, taxed,

&c., and that special execution issue therefor against the property attached."

An execution issued on this judgment, and the land in dispute was sold to one Newhouse, on the 27th of June, 1859, and a deed therefor made by the Sheriff. In July, 1859, Newhouse sold, by quit-claim deed, to Delilah Merritt, the wife of plaintiff in the law or attachment proceedings). On the 27th of August afterwards, the said Delilah sold and conveyed, by like deed, to Corbin & Dow; and on the same day Merritt assigned all his claim to the notes, right of action and judgment to the grantees in said last deed, the record, however, showing the judgment to be satisfied by the sale of the property to Newhouse.

No proof was made to the District Court, at or before the date of the judgment, that a copy of the petition and notice had been sent by mail to defendants, nor was any excuse shown for not doing so, as required by the Statute.

By deeds of November 27th, 1857, and November 28th, 1858, William and Thomas Tibbetts conveyed the lands in controversy to complainant, who, on the first of December, 1859, filed his bill in this case, alleging that the judgment against the Tibbetts was null and void, and praying that the deeds and titles thereunder might be canceled. Corbin and Dow answered, denying generally the averments of the bill; and further asked, if the judgment was found to be void, that they might be subrogated to Merritt's rights and have the benefit of the attachment lien.

On the hearing, the judgment was held null and void, but the lien created by the service of the attachment was preserved. The other material facts will be found in the opinion. Both parties appeal.

*Grant & Smith* for the complainant.

I. An attachment is a conditional lien, dependent upon two things: 1. A real debt; 2. A judgment for that debt.

Drake Attach., 233 ; *Tayler* v. *Mixter*, 11 Pick., 341; *Suydam* v. *Huggeford*, 23 Pick., 465 ; *Lamb* v. *Belden*, 16 Ark., 539 ; *Hall* v. *Cummings et al*, 3 Ala., 398 ; *Harrow* v. *Lyon*, 3 G. Greene, 157.

II. The judgment being void it is not competent for a court of equity or a court of law to revise and correct it now ; and by giving a new and proper judgment, give new life and validity to the attachment lien. *Olmstead* v. *Webster*, 4 Seld., 412 ; *Blair* v. *Russell*, 1 Cart., 516; *Smith* v. *Dudley*, 2 Pike, 60 ; *Walker* v. *Jefferson*, 5 Pike (Ark.); *Rawden et al* v. *Raply*, 14 Ark., 203 ; *Van Dyke* v. *The State*, 22 Ala., 57 ; *Allen* v. *Whitney*, 1 Story, 310 ; *Haley* v. *Baird*, 1 Hew. & Mim., 24.

*G. S. C. Dow* for the defendants, contended that this case is within the rule of *Boker* v. *Chapline*, 12 Iowa, 206.

WRIGHT, Ch. J.—The Code of 1851 (§ 1826), in force when the law judgment was rendered, provides that, " When service has been made by publication only, and no appearance had, default shall not be entered until proof has been made that a copy of the petition and notice was directed to the defendant through the post-office, at his usual place of residence (stating the place) in sufficient time for his appearance, or that such residence is unknown to the plaintiff, or his attorney, or business agent, and could not with reasonable diligence be ascertained." In the case of *Broghill* v. *Lash*, 3 G. Greene, 357 ; and *McGahen* v. *Carr*, 6 Iowa, 331, a construction was given to this section, which if followed must be decisive of one and the principal point in respondent's appeal. That this case falls within the rule there recognized does not seem, indeed, to be very strongly controverted. It is suggested, however, that the subsequent case of *Boker* v. *Chapline*, 12 Iowa, 204, is in conflict with the former rulings, or at least that under that

decision this judgment is not vulnerable to the attack now made. The circumstances of that case were so very different, however, from what appeared in the prior ones that we cannot believe there is any actual, if even seeming, conflict. The case before us is much, very much, more like those first referred to, and must be governed by them. Thus holding, we need not repeat the arguments justifying the construction given in those cases to the statute.

Following these cases, therefore, a majority of the Court conclude, that upon this point the Court below did not err. Before leaving it, however, it is due to the members of the Court thus holding, to say, that one of them regards the construction fully in accordance with the spirit and policy of the statute, while another, without going further, is content to place this case upon the authority of the former rulings; and the third, without wishing to be positively concluded upon the question, conceives it to be his duty to follow the cases referred to, inasmuch as their correctness is not seriously controverted by counsel. Whether the attachment of the property conferred jurisdiction without reference to the subsequent proceedings, or whether the rule recognized in *Paine's Lessees* v. *Mooreland*, 15 Ohio, 435, and other similar cases relied upon by the other members of the Court, is applicable under a bill of this character, and a statute like ours, is a question not made in the argument, and we have therefore not deemed its discussion or examination necessary.

It seems, however, that in September, 1861, after this bill was filed, plaintiff, in the law action, obtained an order of the following purport: He had filed on the 24th of August, 1859, an affidavit "of the non-residence of the said William and Thomas Tibbetts" and it was ordered and adjudged in September, 1861, that the said affidavit "be and the same is hereby ordered to be filed as of the 7th of May, 1858," (the date of the judgment), and should have like effect.

Hodson v. Tibbetts.

And it is now claimed that though the judgment was origi-
nally invalid the filing of this affidavit and this order cured
such invalidity and perfected the title under the sheriff's
sale. In this view, however, we cannot concur.

It is not as if the record was incorrect, and plaintiff had,
upon a proper case made, obtained an order impressing it
with its true character. Thus, if copies of the notice and
petition were, in fact, sent to the defendants, or if the affida-
vit in excuse, contemplated by the statute, was actually filed,
and plaintiff had obtained leave to substitute them if lost,
or to file the proof *nunc pro tunc*, the question would have
been very different from that now presented. But the pro-
ceedings of September, 1861, show that no such affidavit
was filed until in August, in 1859; and establish affirma-
tively that the required proof was not made at or before
the rendition of the judgment. The power of a court to
correct or amend its judgments differs very widely from
what was attempted in this case. To illustrate, an officer
might have leave to amend his return or process in accord-
ance with the truth, so as to prevent injustice and wrong,
but the Court would have no power to sustain and uphold
a judgment previously rendered, by allowing him, after its
rendition, to make a service, because he ought to have made
and intended to make one before. To sustain the position
of respondents, would make jurisdiction depend, not upon
what was done at or before the time of its exercise, but
upon the action of parties and officers long after the judg-
ment was rendered, the proceedings closed, and the rights
of third persons had become vested. This should never be
allowed. We need only remark, that the case of *Walker* v.
*Jefferson*, 5 Ark., 23, relied upon by respondents, decides
no question bearing remotely even, upon the one now under
consideration. Suggesting that no argument of conclusive-
ness can be drawn from the order of September, 1861,
inasmuch as the persons holding the title to the land under

Tibbetts, were not parties to the proceeding, we pass to the consideration of complainant's appeal.

The decree, after setting aside the judgment, proceeds at great length and with much particularity, to adjust and settle the rights of the respective parties. We do not understand complainant to object to the details of this decree, but to stand upon the proposition, that if there was no valid judgment, there was no attachment lien, and that the Court could not hold and declare that the property seized by the attachment should be held liable and bound to pay the debt of Merritt, or those who seek to be subrogated to his rights. The argument is this : The attachment of property passes no estate to the plaintiff, nor is the interest of defendant thereby divested. It constitutes a lien, it is true, but this can only be made available to the plaintiff, upon condition that he recover a judgment, which alone can determine that the claim on which the attachment rests, is just. If he fails to obtain his judgment, the inchoate lien is gone. Drake Attach., 233; *Hale* v. *Cummings*, 3 Ala., 398.

The rule, as thus stated, however, has particular reference to cases where there is final judgment for defendant, or where plaintiff fails to prosecute his action, and the same is, as a consequence, dismissed. For the attachment proceedings are merely auxiliary to the main action, and if plaintiff fails in that, the auxiliary process failed also. But in this instance, there was no judgment for defendant; plaintiff did not fail in his action. It is, as though a judgment for plaintiff had been reversed in an appellate court, and the cause remanded. In such a case, the attachment lien is not lost. It may be assimulated also to a case, where a judgment at law is set aside on the ground of fraud, accident or mistake. Such an order remits the parties to their respective rights and liens as they existed before the judgment. The invalidity of the judgment, for whatever cause, does not

Hodson v. Tibbetts.

defeat the lien. The original demand still exists. All the proceedings leading to the seizure of the property remain unaffected, and the parties are heard again upon the plaintiff's claim. The case is taken up just as if no judgment had been rendered; all rights depending on the preceding steps being unimpaired.

These rules are sustained, as it seems to us, by the soundest principles of equity. If respondents have any valid defense to this claim, they have an opportunity, under this decree, to show it. Plaintiff, in the original action, if he has no just claim against respondents, fails entirely, and the lien of the attachment is at once extinguished. Not only so, but complainant bought, with constructive knowledge of the attachment lien. He knew then, that the property had been seized and was held under the writ. Suppose the execution had been set aside, and the judgment sustained, what weight then would have been in the proposition that he should not pay the money owing on the judgment? None whatever; and the two cases are not substantially different. There has been no failure of the plaintiff's action. The Court rendered a judgment, it is true, which is held, on the application of defendants therein, or complainants who claim under them, to be invalid. And it strikes us as pre-eminently just and equitable that those holding under the sheriff's deed, and to whom the judgment, notes, and all claims connected therewith were assigned, should be subrogated to all the rights of said plaintiff, with the privilege of prosecuting said claim for their own use and benefit; and that the complainant, if he would take the land, must do so subject to the lien of the attachment, which has been in no manner set aside or dissolved. As to the right of Corbin & Dow to be thus substituted, we refer to *Braught* v. *Griffith and McCleary*, *ante*.

Affirmed.

DILLON and COLE, J. J., concurring.

LOWE, J., *dissenting.* — Unable to concur in the fore-going opinion, I proceed to state the grounds of my dissent. It will be observed from the facts stated, that it is a pro-ceeding in equity, to set aside a judgment at law, and certain conveyances made by virtue of a judicial sale there-under. The judgment sought to be relieved against, was obtained by a proceeding in attachment, which had been regularly issued and levied upon the property which is now the subject of this controversy.

This suit in equity is instituted, not by the judgment debtor, but by one who had purchased the property of him after it had been attached. It is not pretended but that the Court had jurisdiction of the writ of attachment by the filing of the proper petition, affidavit and bond, and with its process, had seized and taken into its legal custody the property in question, previous to the plaintiff's purchasing the same. He was, therefore, a *mala fide* purchaser, yet he invokes a court of chancery to declare, by its decree, that this judgment, in the attachment proceeding, is void, and should be set aside; not because of any fraud, accident or mistake in the rendition thereof, but for the other only cause in virtue of which equity will presume to disturb judgments at law—namely, the want of jurisdiction. The plaintiff, as the ground of relief which he asks, alleges that there was no legal service upon the defendant in the attach-ment suit, and as a consequence of this, the judgment and all the proceedings thereunder, were void. The defendants in that suit had been sued as absconding debtors, notice of the pendency of the attachment had been duly published. But the record is silent as to whether a copy of the notice and petition in said suit, had or had not been sent through the mail, to the post office address of the defendants making default, or whether an affidavit excusing the omission of this requirement, had or had not been filed in the cause. It is claimed that this latter requirement is an element of

jurisdiction, and must be complied with before the court had power to act. And so this Court has held in one class of cases, and whilst I have never been able to concur in this construction of the statute, still I do not place my dissent in this case on that ground, but upon the marked distinction which exists between the cases referred to, and the one now under consideration. The profession very well understand that there are two classes of cases, in which, if the defendant is a non-resident, or cannot be served personally, he may be brought before the court by publication. To the first of these classes belong suits in partition, foreclosure of mortgages and tax titles, specific performance, and cases for divorce, &c. In this class of cases, the court has no power to act until the defendants are brought before it in the manner prescribed by law. There is nothing in the statute or in the nature of the cases which requires the Court to take any step or make any order in the proceedings touching the rights of the parties or the subject matter of the controversy, until its jurisdiction is obtained over the person of the defendants by due service. Now, in marked contrast with this, is the other or second class of cases, usually termed actions *in rem*, such as proceedings in attachment and against boats and rafts. In this class of cases, the suit is commenced, not by an ordinary notice, to be served personally on the defendant, or constructively by publication, as in the first class of cases above referred to, but by the issuing of a writ, or the process of the Court, under its seal, and directing the officer to seize the property of the defendant, and to take it into the custody of the law. After this, the sheriff is required to return his writ into Court, with his doings thereon duly endorsed. When this is done, the property is thereby bound from the time of the levy of the attachment. The sheriff is required to keep the same safely subject to the order of the Court. He is also required to make such disposition of the property

Hodson v. Tibbetts.

attached, as the Court may direct, from time to time. If perishable, it may be sold at once. Section 3216 of the Revision authorizes the Court, or the judge in vacation, at any time to appoint a receiver, to take possession of the property attached, and to collect, manage and control the same. And all this the Court is authorized to do before it is possible to affect an absconding or non-resident defendant with notice by publication, or through the post office by mail.

Now, I take it, that when a point or stage in a judicial proceeding is reached where the statute makes it the duty of the Court to act upon the rights of the parties, or to deal with the property seized by its process and taken into its custody, that its jurisdiction has attached. The object of the writ and process is to give jurisdiction, and its levy thereon draws the thing concerning which the Court is to deal or pronounce judgment within its power. Yet in the case of Merritt against the Tibbetts, which was a suit by attachment regularly issued and duly levied, followed with notice by publication, it is claimed that the Court never acquired jurisdiction, because it does not appear that the plaintiff sent through the post-office a copy of the notice and petition to a defendant absconding, so that the ordinary process of the law could not be served upon him. This assumption, in view of what the statute requires of the Court in such case, involves the absurdity, that the Court has and has not jurisdiction of the property seized in attachment at the same point of time.

But we are not without authority upon this question. In the State of New Hampshire, Vermont, New York, Ohio, Indiana, Illinois, Iowa, and by the Supreme Court of the United States, it has been repeatedly held, that it was the seizure of the property in attachment which constituted the jurisdictional act. I will refer to a few cases as a fair type of all.

In the case of *The Lessees of Paine* v. *Mooreland*, 15 Ohio, 435, it was held, that the Court acquired jurisdiction in attachment by the issuing of process predicated upon the requisite affidavit and the attaching of the property; and if after thus obtaining jurisdiction, the Court proceed to render judgment without the publication of the notice, such judgment is not void and cannot be impeached, but must be reversed upon writ of error. This case in its facts was very similar to the one at bar. Both parties derive title from the same person, the plaintiff, by direct purchase—the defendant under a sale in attachment. But no publication of notice of the pendency of the attachment was made, and it was claimed that the proceedings under the same were void. On this question, READ, J., held the following language: "What, then, gives the Court jurisdiction in a proceeding in attachment? The filing of the proper affidavit, issuing the writ, and attaching the property. The moment the writ goes into the hands of an officer he is authorized and required to seize the property. When this is done the property is taken out of the possession of the debtor into the custody of the law. The Court has authority at any time after the return of the writ to direct the property of a perishable nature to be sold. It is not until after the return of the writ that the clerk is directed to make out the advertisement, which the plaintiff is required to have published as the statute directs.  *  *  It is contended that the Court has no jurisdiction and yet the statute authorizes the Court to exercise a judicial act over property attached, namely, to determine whether is is perishable, and if so, to direct its sale.  *  *  *  *  The distinction is between a lack of power or want of jurisdiction in the Court, and a wrongful or defective execution of the power. In the first instance, all acts of the Court not having jurisdiction or power are void—in the latter, voidable only. A Court, then, may act, first, without power or jurisdiction;

second, having power or jurisdiction may exercise it wrongfully ; or third, irregularly. In the first instance, the act or judgment of the Court is wholly void, and is as though it had not been done; the second is wrong and must be reversed on error; the third is irregular and must be corrected by motion. Hence there is a vast distinction between a defect of power, a wrongful exercise of power, and an irregular exercise of power." In accordance with this doctrine it was held, that if the jurisdiction of the Court attached, as it did, by levy upon and seizure of the property, subsequent irregularities would render the judgment voidable only ; and it would remain valid until reversed, and cannot be impeached collaterally. Such appears to have been the decision of the Courts in *Parker* v. *Miller*, 9 Ohio, 108; *Adam's Lessee* v. *Jeffries*, 12 Id., 272; *Mitchell* v. *Eyster*, 7 Id., 257; *Lessees of Cochran's Heirs* v. *Loring*, 17 Id., 409; *Gilman* v. *Thompson*, 11 Verm., 643; *Rowan et al* v. *Lamb*, 4 G. Greene, 468; 1 Cart., (Ind.), 296.

In the case of *Voorhees* v. *The Bank of the United States*, 10 Pet., 449, recognizes the same general principle. The Court says that " the want of evidence of publication upon the record was at most but error, and did not vitiate the proceedings."

In *Gilman* v. *Thompson*, 11 Verm., Mr. Justice COLLAMER said that the courts obtain jurisdiction over the persons of defendants by the service of process either on their bodies or on their property. The attachment of the property is one thing, and notice to the party is another. They are different commands, and the officers have distinct duties to perform for these purposes." * * * " If the officer," says this distinguished judge, " attach real estate and leave a copy with the town clerk, he has made an attachment, and the Court has jurisdiction of the party. If the return also shows notice it is well, if not it is merely cause of abatement "; that is, the proceeding is not rendered

void for want of notice if the jurisdiction be had by the attachment of the property. In the 6th volume of Vermont Reports a case is reported as an action of debt on a transcript of a judgment obtained by attachment, without actual notice to the defendant. It was held that this did not render the judgment void, for the reason that it was the seizure of the property which gave jurisdiction to the Court.

Now, the case at bar is an application to a court of equity for relief against a judgment in an attachment suit. The plaintiff bases his right to relief in the premises alone upon a charge that the judgment was void, the Court never having acquired jurisdiction for the reason stated.

With me, the authorities to which I have referred, are on this point conclusive, and they show that the plaintiff's ground of complaint is without foundation. But my brethren decline to consider these authorities, because the defendant's counsel did not in his argument seek to sustain the jurisdiction of the Court in the attachment suit, upon the principles laid down in the same. I do not so interpret my duties as a member of this Court. I think the rights of the parties in an equity case, being tried upon the merits, should be disposed of and adjusted in accordance with the rules of law and practice applicable to the case, and not what counsel may or may not say in the argument.

They say they prefer to follow the rulings of this Court in other cases upon this subject. My reply to this is, that these cases in their motives, aims, characteristics and processes are obviously distinct from the class of cases known as actions *in rem*, and therefore should not be authority in this case. In my opinion the plaintiff's bill should have been dismissed.