HALE, ADM'R v. CUMMINGS & SPYKER.

1. An administrator may plead the insolvency of the estate committed to his charge, in abatement of a suit by *capias*, in the life-time of the intestate, in which an attachment also was sued out as an auxiliary process, and levied on real and personal estate. And the lien of such attachment is only an inchoate right dependent on the judgment, which not being allowed, the lien is gone.

Writ of error to the County Court of Montgomery county.

ASSUMPSIT against Carpenter, as drawer of a bill of exchange. The suit was commenced by *capias ad respondendum*, which was served; afterwards the plaintiffs sued out a writ of attachment pursuant to the statute authorising such process, and this was levied on certain real and personal estate. The personal estate was replevied by the intestate, who gave bond and security to deliver it to the sheriff, to satisfy such recovery as should be had in the cause.

Carpenter died before any judgment was had, and the defendant as his administrator, was made a party by *scire facias*, who pleaded in abatement, that the estate of his intestate was insolvent, and had been so represented by him, and so declared by the competent tribunal. The plaintiffs replied the issuance of the writ of *capias* and attachment, showing that a levy had been made on real and personal estate; the latter of which, was replevied according to law, and averring that this levy had never been returned discharged, or set aside.

The defendant demurred to this replication; whereupon, the County Court overruled the demurrer and gave final judgment

for the plaintiffs, to be levied on the property levied on by the attachment.

The defendant prosecutes his writ of error and here questions the correctness of the judgment sustaining the replication.

HARRIS, for the plaintiff in error—cited, Aik. Dig. 151, § 2, Ready v. Thompson, 4 S & P. 52. And insisted that the lien created by the levy was discharged by the death and subsequent insolvency of the estate, inasmuch as the statute provides for the equal division of the estate among all its creditors. The lien by itself creates no right whatever, and before it is perfected by judgment, the death of the intestate places all his creditors upon a perfect equality.

ELMORE, contra—cited, Mcek's Supplement, 9, § 8, Collingsworth v. Horn, 4, S & P. 237; Cary v. Gregg, 3 Stewart, 433; McRae v. Augustine, 3 Porter, 138; Perine v. Babcock, 8 Por. 131; Pond v. Griffin, 1 Ala. Rep. N. S. 678.

GOLDTHWAITE, J.—The matter to be determined from this record is, whether an administrator can plead the insolvency of the estate committed to his charge, in abatement of a suit commenced by *capias* in the lifetime of the intestate, in which an attachment also was sued out as an auxilliary process, and levied on real and personal estate.

We state the question in this manner, to avoid complexity, for it is apparent that the only effect of the replication, is to place the fact of the levy upon the record.

The 33d section of the act of 1806, Aik. Dig. 151, § 2, provides, among other matters, as follows: And to the end that the executor or administrator, may have an opportunity to ascertain the situation of the estate of the testator or intestate, no suit or action shall be commenced or sustained against such executor or administrator, in such capacity, till after the expiration of six months from the time of proving the will of the testator, or of granting letters of administration on the estate of the deceased. Nor shall any suit or action be commenced, or sustained against him, after the estate of the testator or intestate is represented insolvent; *excepting however,* in all cases, actions for debts due for the deceased's last sickness and funeral expenses: *excepting also,* that if the executor or admin-

istrator, having objections to the claim on which any action (other than these last mentioned) may be brought, shall consent to have such claim settled by action at law,—in such case, the judgment shall determine the debt, and be reported by the commissioners as such.

It is proper to remark, that an antecedent part of the same statute provides for a *pro rata* distribution of the proceeds of an insolvent estate among all its creditors, but giving a preference to debts due for the last sickness, and for funeral expenses.

It is very clear, that this enactment does not contemplate any cases, in which suits can be maintained after an estate is represented insolvent, except those which are specified, and therefore, we conclude there is no difference between those suits prosecuted by attachment, and those commenced in the ordinary mode.

But the plaintiffs insist that they have acquired positive rights by the levy, which would have been recognised if the intestate was living, and therefore ought to be enforced notwithstanding his death.

To this, we answer, that it is much more probable that the attachment laws were intended to prevent the debtor from eloigning his estate, than for the purpose of giving any creditor a preference; but whatever may be the object of such enactments, it is very certain the statutes now in force on this subject, do not repeal the act which has been quoted.

But independent of this, we think the assumption of the plaintiff, is based upon a mistaken conception of the effect of the lien of an attachment; it is inchoate and imperfect, until a judgment is rendered, for it is that alone which determines the claim on which the attachment rests to be just. If he fails to establish his claim, the inchoate lien is entirely gone, and there is no difference between such a case and this, because the statute has, in effect, declared that it is unjust for one creditor to absorb the whole estate when that is insolvent.

It is because the law declares that no suit shall be sustained after the estate is represented insolvent, that the lien is gone.

Let the judgment be reversed, and the cause remanded.