## FITZPATRICK, ET ALS. V. B. & W. EDGAR.

1. A *scire facias* against the heir, to subject lands descended to him, to the payment of a judgment obtained against the ancestor, must be sued out in conformity with the statute of this State, and therefore the executor or administrator must be a party.

Error to the County Court of Montgomery.

This was a *scire facias* sued out at the instance of the defendants in error against the *terre* tenant and heirs of Joseph Fitzpatrick, deceased, and others alleging that on the 10th December, 1840, the plaintiffs recovered a judgment against Joseph Fitzpatrick, deceased, for $1192 91 damages, besides costs, and six other persons, who are named; that execution of the damages and costs aforesaid, remain to be made, and commanding the sheriff to make known these facts to the tenant in possession of the lands of Joseph Fitzpatrick, and others, his heirs, who are named in the writ, to show cause why the damages and costs ought not to be made out of the lands and tenements of the deceased, and that the other defendants show cause why the damages and costs ought not to be levied of their goods and chattels, and also of the lands and tenements they were seized of on the 10th December, 1840.

To this writ, which was returned executed, the tenant in possession and heirs of Joseph Fitzpatrick, deceased, demurred, and the plaintiffs joined in the demurrer, which was overruled by the court.

They then pleaded that after the death of Joseph Fitzpatrick, and before the said *scire facias* issued, one Abram Martin took out letters of administration upon the estate of said Joseph Fitzpatrick, in the Orphans' court of said county, and afterwards, and before said *scire facias* issued, reported the said estate insolvent to said court, which report was by the said court allowed and received, to wit, on the —— day of ——, and before the said *scire facias* issued; and that within three months after making said report of insolvency, the said administrator made application for leave to sell the real estate of said Joseph Fitzpatrick, which

was granted by the court before the said writ of *scire facias* issued, all of which remains in full·force and unreversed, &c.

To this plea the plaintiff demurred, and the court sustained the demurrer.

The heirs and *terre* tenant declining to plead over and admitting that the said Joseph died seized and possessed of the land as returned by the sheriff, and the other defendants appearing by attorney, and saying nothing in bar or preclusion of the right of the plaintiff to have execution against their goods and chattels, lands and tenements, and it appearing to the satisfaction of the court that judgment was obtained, &c. ordered that the said plaintiffs have execution, &c. An agreement was entered of record that the rights of Sarah Fitzpatrick, as the widow of the deceased, should in no manner be compromitted by this judgment. The assignments of error are,

1. The court erred in overruling the demurrer to the *scire facias*.

2. In sustaining the demurrer to the plea of the defendants.

3. In awarding execution both against the lands of Joseph Fitzpatrick, and against the other defendants generally.

ELMORE, for the plaintiffs in error. Lands at common law, were not subject to execution, and the proceeding by *scire facias* to subject them in the hands of the heirs is derived from the statute. The statute prescribes that the personal representative must be a party. [Aik. Dig. 156, § 17.] None of the requisites of the statute have been pursued.

When the administrator reported the estate insolvent, the title of the heirs was divested, and vested in him as the officer of the law. The lands then became assets in his hands to pay debts generally, as prescribed by the statute. The plaintiff can be in no better condition, and has no better right to an execution against the lands than against the goods of the deceased, and as to the latter, he has lost his priority by failing to sue out execution before the death of the ancestor. [4 Stewart & P. 237.]

The statute requires *scire facias* to the administrator, as well as the heirs upon a judgment against the intestate in his life time.

GOLDTHWAITE, *contra*. In England, on a recovery against the ancestor, lands subject to execution in his life time may be

Fitzpatrick, et als. v. B. & W. Edgar.

made liable after his death by *sci. fa.* against the heirs and *terre tenants.* [2 Saund. 30, note 4; 6 Bac. Ab. 114, 115; 1 Stewart 193.]

In this State, lands of the debtor are bound from the rendition of judgment. [3 Ala. Rep. 560; 1 Brock. 166.]

It is not necessary to make the personal representative a party on a judgment against the intestate. The statute relied on by the other side was intended for the case of a judgment against the personal representative, who neglected to obtain an order of sale of the lands.

Upon the death of the defendant, the descent is cast upon the heir incumbered with the *liens* created by the judgment.

ORMOND, J.—The question to be decided is, whether on a judgment recovered against the ancestor, the plaintiff can have execution against the heir upon *scire facias*, for lands descended without including the personal representative, no execution having issued on the judgment.

It appears that at common law, this writ lies in favor of the plaintiff against the heir, upon judgments after a year and a day. [Withers v. Harris, 1 Salk. 600.] It is however, stated in the Institutes, that this remedy at common law was confined to real actions, and was given in personal actions by the statute Westminster, 2; [3 Thomas ed. Co. Litt. 524; 290 b.; 291 a ; Jefferson v. Morton, 2 Saund. 30, Note, 4.]

In the case of Bell v. Robinson, [1 Stewart, 193,] this court held, that this remedy could not be had against the heirs where the judgment was obtained after the death of the ancestor against his personal representative; after this decision was made, the following act was passed. "Whenever an executor of any deceased testator, or administrator of any deceased intestate, shall fail to apply to the county court for the sale of real estate, for the purpose of paying the debts due thereof, the judgment creditor may, upon filing a suggestion in the clerk's office, in which judgment shall have been rendered, that real estate has descended to the heirs, and that sale of the same, or some part thereof, is necessary for the satisfaction of said judgment, and that said executor or administrator, has failed or refused to make application for sale thereof, and setting out the names of said personal representatives and heirs, sue out a *scire facias* against said executor or admin-

istrator and heirs, returnable to the next term of said court, requiring them then and there, to show cause why said plaintiff should not have execution against said real estate; and if sufficient cause to the contrary be not shown, execution shall be awarded against said real estate; and all executors or administrators who fail to apply for leave to sell real estate, three months after reporting the estate insolvent, shall be deemed guilty of a devastavit, and may be sued on their bond, together with their securities." [Aik. Dig. 156, § 17.]

It is insisted that this statute applies only to cases where the judgment is obtained against the personal representative, and not where it is obtained against the ancestor, but we are unable to perceive any reason for giving to it such a limited interpretation. The language is general and sufficiently comprehensive to embrace all cases of judgments which bind the realty. A construction which would confine this statute to those cases only where the judgment was obtained against the personal representative, and making thereby by implication, an exception in favor of creditors who obtained their judgment against the ancestor in his life time, would be contrary to the whole scope and design of our legislation on this subject, by which the common law preferences of certain creditors is destroyed, and the property of the deceased distributed rateably, where it is insufficient to pay all the debts.

Nor can we conceive of any adequate motive for confining the statute to those cases where judgments had been obtained against the personal representative. When a suit is prosecuted against the personal representative, if he omits to plead his want of assets, the judgment is binding on him personally, there would therefore seem to be more reason for supposing that the statute was intended for the benefit of creditors who had obtained judgments against the ancestor, than of those who obtained it against the personal representative. It is the duty of the personal representative to pay all the debts of the deceased, those which have been matured into judgments before his death, as well as those which have not. The natural and appropriate fund for this purpose is the personal estate, but if that is insufficient, it is his duty to obtain an order to sell the lands, which by law, is created a fund for that purpose, whether the estate is entirely insolvent or not. [Woods v. McCann & Witherspoon, 3 Ala. Rep. 61.] If he fails to do this, a summary remedy may be had against the land in the

possession of the heirs. If he fails for three months after report-ing the estate insolvent to apply for leave to sell the lands, he is guilty of a devastavit, and may be sued on his bond.

It appears from this examination that judgment creditors, wheth-er the judgment was obtained previous or subsequent to the death of the testator or intestate, are fully provided for, at least to the extent of the estate of the deceased, real and personal.

It is, however, supposed that as the judgment creates a *lien* on the lands of which the defendant is seized, at the time the judg-ment is obtained, that judgments obtained during the life of the testator should be satisfied out of the real estate after his death, in preference to judgments of later date.

A *lien* is not an absolute, but a qualified right, given by law or created by the act of the parties, by which real or personal pro-perty is charged with the payment of a debt or duty. Mr. Jus-tice Buller defines a *lien* to be a qualified right, which in given cases may be exercised over the property of another. [Lickbarrow v. Mason, 6 East, 25 note.] In this sense it is employed by our Legislature, in determining the priority of *liens* between judgment creditors. [Aik. Dig. 166.] A *lien* on land in virtue of a judg-ment, being then merely a right to charge the land with the pay-ment of the judgment, may be waived, or lost by the *laches* of the party entitled to enforce it. So, a *lien* created by law, may be taken away by law, as was held by this court, at the last term, in the case of Watson and Simpson v. Simpson, *supra.*

The plaintiff in this case might have enforced his lien by sel-ling the lands of the deceased if he had thought proper to do so. He has lain by until the administrator has reported the estate in-solvent, which by operation of law divests the estate out of the heirs at law, and vests it in the administrator for the purpose of equal distribution; and it would be contrary to the whole scope and design of the statute, and defeat its avowed object, if he took the estate charged with the payment of such dormant *liens;* as the *lien* of an execution on personal property, may be lost by the *laches* of the creditor; [Blount & Stanly v. Traylor, 4 Ala. 667;] so may the *lien* of a judgment on land be lost in the same way. [Ib. 543.]

There is still an objection to be considered, equally potent with any yet mentioned. It appears to be doubtful whether at com-mon law a *scire facias* would lie against the heir upon a judg-

ment obtained against the ancestor in a *personal* action, or whether the remedy was not given by the statute of Westminster, 2d; but conceding that question, it was not a right to *sell* the land in the hands of the heir, but to *extend* it by the writ of *elegit.* The right to sell land in discharge of judgments is given by our statute, which declares that lands shall be subject to the payment of judgments, and that the clerk shall frame the "execution." To infer from this statute that a *scire facias* would lie against the heir after the death of the ancestor, would be putting a most unreasonable construction on it. The only statute we have, in terms authorising such a proceeding against the heir, is the one already cited, and that requires the administrator to be a party; obviously for the purpose of enabling him to show whether the estate is insolvent. It appears therefore to follow, quite conclusively, that as the right to *sell* lands in the hands of the heir, to satisfy a judgment of the ancestor, did not exist at common law, such right if claimed here, but must be exercised in conformity with the statute.

It results from this examination, that this proceeding cannot be sustained, and it therefore becomes unnecessary to enquire into the correctness of the entry of judgment.

Let the judgment of the court below be reversed.