[Phillips v. Ash's Heirs and Adm'rs.]

# Phillips *v.* Ash's Heirs and Adm'rs.

*Bill in Equity by Judgment Creditor to Enforce Lien of Attachment on Lands against Heirs.*

1. *Levy of attachment on lands; death of defendant before judgment.*—When an attachment is levied on lands, and the defendant dies before judgment, the lien created by the levy is thereby destroyed; and though the action may be revived, and prosecuted to judgment against his personal representative, the lien is gone, and the revivor does not affect the rights of heirs or devisees.

2. *Same; lien not enforced in equity.*—The plaintiff cannot, in such case, by bill in equity subject the lands to the satisfaction of his debt, since a court of equity can not aid or supply the defects of a statutory remedy. (The case of *McClellan v. Lipscomb*, 56 Ala. 255, was not intended to intimate that such a bill could be maintained.)

APPEAL from the Chancery Court of St. Clair.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 6th May, 1878, by Jackson Phillips, against the widow (personally and as administratrix) and children of William M. Ash, deceased ; and sought to subject a tract of land, which had belonged to said William M. Ash in his life-time, and on which an attachment had been levied at the suit of the complainant, to the satisfaction of the judgment in the attachment case, which had been rendered against the widow as administratrix of said Ash. The attachment suit was commenced in April, 1864, and the attachment was levied on the lands, and also on several slaves, on the 22d April, 1864. The defendant in attachment died in 1865, and letters of administration on his estate were duly granted to his widow on the 29th October of that year. At the September term, 1866, of the Circuit Court of said county, in which the suit was pending, the death of the defendant in attachment was suggested, and a *scire facias* was ordered to issue to his administratrix; and the cause was revived against her at the next term. At the October term, 1868, judgment was rendered for the plaintiff, on issue joined ; and the following order was added to the judgment : " And it further appearing to the satisfaction of the court that this suit was commenced by original attachment, and that the same was levied, in the life-time of the deceased, on lands and negro slaves, the property of said defendant ; it is therefore now ordered, that the lands so levied upon be condemned to the satisfaction of this judg-

ment," particularly describing them; "and it is further ordered, that a *venditioni exponas* issue out of this court, commanding the sheriff of said county to sell said lands or property, for the purpose of satisfying said judgment, in manner and form as the law in such case directs." The lands were sold under a *venditioni exponas* issued on this judgment, and were bid off by the plaintiff at the price of $100. The bill alleged, that the decedent's estate had never been reported or declared insolvent, and that the lands were not worth more than the amount due on the plaintiff's judgment; and the complainant insisted, that his inchoate lien on the lands, acquired by the levy of the attachment, was perfected and made absolute by the judgment in his favor, but he had no title which could be asserted at law; and he therefore prayed that the lands might be sold, as in proceedings to foreclose a mortgage, and the proceeds of sale be applied to the satisfaction of his judgment, and also for general relief.

The defendants demurred to the bill, assigning the following (with other) causes of demurrer: 1st, "because complainant has no lien on the lands in controversy, on which to found the relief prayed;" 2d, "because whatever rights complainant had or has, under said attachment suit, are statutory, and this court will remit him to his statutory remedy for their enforcement;" 3d, "because complainant has a plain, adequate, and complete remedy at law." The chancellor sustained the demurrer on these grounds, and dismissed the bill; and his decree is now assigned as error.

J. W. INZER, and L. F. BOX, for appellant.

TAUL BRADFORD, *contra*. (No briefs on file.)

BRICKELL, C. J.—An attachment, as the leading process in the commencement of an action at law, which is executed by a levy upon the estate, real or personal, of the debtor, is unknown to the common law, derived here wholly from statutes. Its purpose is, that the jurisdiction of the court, in ulterior proceedings, may be more effectual, and to afford the plaintiff security for the satisfaction of the judgment which he may obtain. The levy, from its date, creates a lien—a right to charge the property levied upon, with the payment of the judgment rendered, in priority of any subsequent alienations the defendant may make, or of any subsequent incumbrances he may create, or of subsequent liens arising by operation of law, in favor of other creditors. The lien differs from the lien of an execution, as it now exists, or

the lien of a judgment on lands, as it formerly existed. It operates only on the particular property which is the subject of the levy, and is incipient, inchoate, and conditional. It begins with the levy, and depends upon the condition, that the plaintiff in the suit obtains judgment, upon which process may issue authorizing a sale of the property attached. The lien terminates, if such judgment is not obtained. In its very nature, the lien is, consequently, less stringent, frailer, and more uncertain, than the lien of an execution. *Fitzpatrick v. Edgar*, 5 Ala. 499; *Hale v. Cummings*, 3 Ala. 398; *Lamar v. Gunter*, 39 Ala. 324; *McEachin v. Reed*, 40 Ala. 410.

Personal property, subject to execution, may be attached; and the officer must take it into possession, retaining the custody thereof, unless it is replevied in the mode prescribed by the statute. The levy displaces the possession of the defendant, and clothes the officer with a special property. *Woolfalk v. Ingraham*, 53 Ala. 11. A levy may be made on real estate, whether the same be a fee-simple, or any less legal estate.—Code of 1876, § 3268. The effect of a levy on real estate differs materially from a levy on personal property. No estate, or interest, passes to the officer, or to the plaintiff; no right to the possession, or to take the rents, issues, or profits. The possession, and right of possession, remain in the defendant, undisturbed. A lien is created by the levy, superior to subsequent liens, alienations, or incumbrances, which will be available to the creditor, if he obtains judgment, to which the real estate can be made subject by process issuing upon it.—Drake on Attachment, § 239.

All personal actions, which may be commenced by attachment, or in the course of which an ancillary attachment may issue (except actions for injuries to the person or reputation), survive for and against the personal representatives of the respective parties.—Code of 1876, § 2921. The death of the defendant, after the levy of the attachment, causes a temporary suspension, or abatement of the suit, which must be cured by a revivor against his personal representative. The title to all personal property of a deceased person devolves, by operation of law, on his personal representative. Death works a change of the parties to the suit, but, of itself, does not dissolve the attachment, or impair its lien on personal property. For, when the revivor is had against the personal representative, there is before the court the party having the title; and if judgment is rendered against him, it operates directly on the property; and a *venditioni exponas*, or a *fieri facias*, may be issued upon it, under which a sale may be made for the satisfaction of the judgment. But, if the

estate of the defendant has been judicially declared insolvent, then the lien is lost. The judicial ascertainment of the insolvency takes away all right to execution on the judgment, and transfers to the court ascertaining it exclusive jurisdiction to marshal and distribute the assets, and of all debts and claims chargeable upon them; and the statute intervenes, and declares the order in which debts and claims are to be paid.—*Woolfalk v. Ingraham, supra.*

But the death of the defendant, *pendente lite*, of necessity works a loss of the lien created by the levy of the attachment on real estate, If he dies intestate, the lands descend immediately to his heirs; or, if he dies testate, they pass to his devisees. The personal representative takes no estate or interest in them, and a judgment against him will not bind them. No other than real actions, under our statutes, are capable of revivor for or against heirs or devisees. As the title resides in them, and they cannot be made parties, no judgment can be rendered by which they are to be divested of their estate, though the levy created a lien, continuing during the life of the ancestor. This is the frailty and uncertainty of the lien, as the statutes have created it.—*McClellan v. Lipscomb*, 56 Ala. 255.

The history and changes of our legislation indicate, very clearly, a fixed purpose to prevent lands descended, or devised, from being subjected to sale under legal process issuing on a judgment against the personal representative. Lands were not, at common law, liable to the payment of debts; but it is not probable this doctrine of the common law ever obtained in this State. It is certain that, at a very early period in our legislative history, it was abrogated, and lands were made subject to judgments of courts of record, against the party having a beneficial legal estate in them.—*Nelson v. McCrary*, 60 Ala. 301. A judgment, at common law, against the personal representative, could not, of course, operate on lands, for he had no estate in them; and we are not aware of any English statute, which gave any remedy for subjecting them to the satisfaction of such judgment, which could ever have been considered of force in this State. The statute of Westminster 2, 13 Edw. 1st, authorized a *scire facias* against the heir, on a judgment rendered against the ancestor while living, but not on a judgment against the personal representative. In this respect, this statute was never regarded of force in this State (*Bell v. Robinson*, 1 Stew. 193); and if it had been, it would have been superseded by the act of 1828, which gave a judgment creditor a *scire facias*, to subject lands descended, if the personal representative neglected to apply to the Orphans' Court for an order to sell

them for the payment of debts.—Clay's Dig. 197, § 27. This statute was construed as applying, not only in case of judgment against the ancestor, but likewise to judgments against the personal representatives.—*Fitzpatrick v. Edgar*, 5 Ala. 498. But it did not extend to lands devised—these could be subjected to the payment of debts, only in the mode prescribed by the statutes; that was, through the medium of the Orphans' Court, as it was then known.—*Ogden v. Smith*, 14 Ala. 428.

There was no re-enactment of this statute by the Code; and the effect and operation of section ten was, to repeal it. Not only was it repealed, but it is expressly enacted, that no execution can be issued against the personal representative on a judgment against the decedent, except in the particular case provided for by section 3213 (2875), in which there may be an existing lien by execution at the death of the defendant; and it is further declared, that the judgment shall not be revived against the personal representative except by suit thereon.—Code of 1876, § 2633. By these enactments, there is a clear expression of a legislative intention, that lands shall not be subjected to sale under a judgment against the personal representative.

But, it is urged that, while this may be true at law, as a lien was acquired by the levy of the attachment, and there is a want of legal remedies to enforce it, a court of equity will interfere, as it interferes when there is a clear legal right, and a want of adequate legal remedies to make it available. We do not understand that a court of equity intervenes to remove impediments which result from statutes to the enforcement of rights they create. If, in such case, the court interfered, it would give a higher and better right than the statute created—a right not existing at law, and a benefit the law does not confer.—*Neate v. Duke of Marlborough*, 3 M. & C. 407. An attachment is a special statutory remedy—it is in derogation of the common law; and in resorting to it, and deriving rights from it, the statutes must be pursued. If, from any cause, the remedy it affords is not full and complete, a court of equity cannot cure the deficiency.—*McPherson v. Snowden*, 19 Md. 233. The jurisdiction of that court is as well and carefully defined as that of courts of law. Neither can take up a statutory remedy, where the statute leaves it, and enlarge it, or extend it to cases for which the statute has not provided.—*Janney v. Buell*, 55 Ala. 408. It was long ago said by Lord TALBOT, and the remark has been often quoted and approved in this court, that "there are instances, indeed, in which a court of equity gives a remedy, where the law gives none; but, where a particular remedy is

given by law, and that remedy is bounded and circumscribed by particular rules, it would be very improper for this court to take it up where the law leaves it, and extend it' further than the law allows."—1 Story's Equity, § 61.

But there is not, in fact, any want of adequate remedies for the creditor to reach lands descended, or devised, and subject them to the payment of his demand, whether it be by judgment against the ancestor, or against the personal representative, or a mere simple contract. The Court of Probate has full jurisdiction to order a sale of the lands for the payment of debts, on the application of the personal representative. If the personal representative fails to make the application, to the prejudice of creditors, it would be good cause for his removal. There can be no substantial reason for the preservation of the lien of the attachment; or for affording any other remedy to creditors to subject lands descended or devised. It was not intended by the queries suggested in *McClellan v. Lipscomb, supra,* to intimate an opinion that the lien of an attachment would survive the death of the defendant; or that a court of equity, in that event, could take it up and enforce it. The death of the defendant, pending the attachment, dissolved and removed the lien on the land, and a court of equity is without jurisdiction to restore it.

The decree is affirmed.